## COMPLAINT

### COUNT I
### TRESPASS BREAKING AND ENTERING

FILED
2017 JUL 20 A 11: 18
US DISTRICT COURT
BRIDGEPORT CT

1) On or about March 18, 2016 a representative of the Plaintiff went to the subject property and found the lock had been changed, the door handle had been changed, and there was a lock box on the door. He immediately notified the Plaintiff.

2) The Plaintiff contacted the family attorney, Willard Carter, of Danbury, CT, who contacted Defendant Midland Mortgage Company immediately.

3) Defendant, Midland Mortgage Co. told Attorney Carter that the property "had been reported as abandoned" and that the Plaintiff should call Safeguard Property Preservation Company to have the lock box removed and gain access to her property. The representative of the Defendant provided Attorney Carter with a phone number for Safeguard of Valley View, OH.

4) Plaintiff contacted Safeguard Property Preservation Company and was told that she should call back the following week and arrange for a representative to meet with their locksmith where they would release the premises and give the representative the key. She was given a reference number 5341985.

5) When the Plaintiff called back the following Wednesday she was told that she would have to contact the Defendant as the bank had not released the property.

6) Plaintiff became aware that the electric service, which she had paid and maintained, had been changed to the name of the bank, according to the electric service provider. She was told that electric service was still on and had been continuously maintained without interruption.

7) Attorney Carter contacted the Defendant and he was told again that the Plaintiff should contact Safeguard to have the lock box removed.

8) Plaintiff contacted Safeguard and was told they would contact Defendant Midland Mortgage and would call her back in several business days.

9) This repeated, over and over, with the Defendant telling Attorney Carter to have Plaintiff

contact Safeguard Property Preservation Company and Safeguard telling Plaintiff they would contact Defendant and subsequently Defendant not releasing the property.

## COUNT II
## TORTIOUS INTERFERENCE AND NEGLIGENCE

10) At no time did Defendant Midland Mortgage Co or their agents, Safeguard Property Management, inform either the Plaintiff or her attorney that there was damage to the property.

11) Finally on or about May 13, 2016, the Plaintiff contacted the Defendant and after almost an hour on the telephone, the Defendant's representative, after futile attempts to contact who they needed to speak to at Safeguard gave the Plaintiff the lock box code.

12) The Plaintiff contacted her representative and he went to the house that evening, entered the property, and informed the Plaintiff of the existence of a serious mold problem.

13) The Plaintiff contacted a mold remediation specialist and was informed that the personal property on the premises was severely damaged and in his opinion this condition had existed for a period of months. The Defendant had care custody and control of the property for approximately three months depriving the Plaintiff of care custody and control of her property and her personal property or access to same during that time.

14) Plaintiff contacted Safeguard and they would not release any records to her to assist in filing an insurance claim. They referred her to their client the Defendant.

15) Plaintiff filed an insurance claim for the loss.

16) Plaintiff contacted the Defendant and was told to submit a request for a copy of the "property preservation file" in writing.

17) Plaintiff faxed a written request for a copy of all logs and photos of Safeguard's inspections of the property and an itemization of charges.

18) Defendant told Plaintiff that the documents were 'internal" and they would not release them to her except with subpoena despite the fact that they billed the Plaintiff some approximate $750 for the services of Safeguard they would not release even an itemization of the cost.

19) The representative would not give any further information as to the source of the water

damage that created the mold problem.

20) Plaintiff then spoke to a supervisor at Safeguard, that wishes to remain unnamed due to contractual obligations to the Defendant, who told Plaintiff that they took possession on February 24, 2016 and after their second inspection on or about March 25th, they reported the presence of mold to the Defendant and they never received authorization from the Defendant to perform or cause to be performed any remediation.

## COUNT III
## NEGLIGENCE

21) The Defendant or their agent, Safeguard Property Management, never informed the Plaintiff or her attorney, Willard Carter, in the numerous calls made to them of the existence of a mold problem

22) The Defendant, who had taken possession of the Plaintiff's property and locked her and her representatives out of the property did not take remediation action knowing of the mold problem. At a minimum remediation would have been a) finding and stopping the source of water that precipitated the mold b) removing any standing water c) dehumidifying the premises down to 35% humidity d) fogging with chemicals to stop mold growth.

23) The Defendant, who collects the insurance premium in escrow and has the name of the insurance company and the policy number did not inform the insurance company of damage to the property or take action to prevent further damage to the property and the Plaintiff's personal property. This insurance company received no claim prior to the Plaintiff contact when she discovered the damage.

24) The Defendant specifically and deliberately refused to provide information regarding the date of loss or source of water damage to the Plaintiff when she told them it was necessary for the insurance company to cover the loss.

25) The Plaintiff's valuable and in some cases irreplaceable personal property was damaged by the negligence of the Defendant by their not taking remediation action, or contacting the insurer, or informing the Plaintiff or cooperating processing the insurance claim the Plaintiff filed.

26) Defendant, Midland Mortgage Co., by taking custody and possession, through their agent, Safeguard, created a bailment situation and had a duty to protect the property of the Plaintiff from damage.

## COUNT IV
## TRESPASS TO CHATTEL

27) The property of the Plaintiff, both the real property that the Defendant has an interest in and the Plaintiff's valuable personal property was damaged and continued to be damaged by the failure of the Defendant to exercise proper care. Plaintiff and her representatives were denied access to her personal property in the house.

28) When the Defendant took possession of the Plaintiffs property both real property and personal property they assumed a duty to exercise proper care in protecting all property, both real property and personal property from damage.

29) The Defendant is responsible for negligence that caused damage and continued to cause damage by failing to act to mediate the mold, or notify the Plaintiff of the mold and allow her or her representatives back into the house to address the problem and remove her personal property.

30) Further, by the Defendant's failure to cooperate with the Plaintiff in pursuing a property loss claim with insurer, by refusing to provide relevant information, in their possession, the property damage has not been repaired and the real property is uninhabitable and rendered worthless except for land value.

31) The Plaintiff, prior to the regaining access to her property and discovery of mold, was approved for a new mortgage on the property in the amount of $60,000 which would pay the off the mortgage held by the Defendant and provide additional money to the Plaintiff to pay the taxes due by June 30th and allow for additional money that the Plaintiff needs.

32) The Defendant's negligence resulting in property damage prevents the refinancing depriving the Plaintiff of needed funds and is a proximate cause of other financial difficulties of the Plaintiff which have resulted and will result in negative consequences of additional monetary expenses and damages.

33) The property worth an estimated $135,000 is unsaleable and virtually worthless as a residential single family home due to the negligence of the Defendant.

34) The personal property of the Plaintiff in the home is seriously damaged and will require the services of various conservators to repair which will cost tens of thousands of dollars.

35) Some of the personal property of the Plaintiff is irreplaceable and of great sentimental value.

36) The Plaintiff is unable to live in her home or rent the house or any part of it for income.

37) The Plaintiff has in addition to financial damages aforementioned has suffered great emotional distress as a result.

38) The property was not in foreclosure at the time the bank took possession through their agent Safeguard.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff prays for a judgment against the Defendant as follows:

1) Order of the Court Restraining any party from foreclosing or selling subject property at 193 New Castle Ave. Felton, DE 19943.

2) A prejudgment award of $25,000 for Plaintiff to remove her personal property and begin remediation actions.

3) Suspend payments of mortgage, without further interest or penalty, to Defendant until the case has concluded.

4) Credit to Plaintiff for any and all late charges on mortgage back to the date the Defendant caused the trespass and locked the Plaintiff out.

5) Monetary damages to cover all remediation and repairs to the subject property and personal property currently estimated to be $95,00 and the amount of money Plaintiff was to receive as cash back from the refinance in the amount of $20,000 and all other monetary damages proximately caused by the damage and loss to the subject property.

6) Loss of rental income for the room that is available for rent at $500 a month until repairs are completed and the home is habitable.

7) Loss of use of premises to the Plaintiff not covered by homeowners insurance.

8) All attorney's fees and costs of this action.

9) Punitive damages in an amount to be determined by the court.

10) For an award of such other damages as the Court sees fit.

*[Signature]*
P.O. Box 777
Ridgefield, CT 06877